# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**MICHAEL JAMES EVANS,**

      **Plaintiff,**

        **v.**

**JAMES DEACON, et al.**

      **Defendants.**

**Case No. 3:11-cv-00272-ST**

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## <u>INTRODUCTION</u>

Now before this court are three motions filed by plaintiff, Michael James Evans ("Evans"), an inmate in the custody of the Oregon Department of Corrections ("ODOC"). He is currently housed at Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon, in its Administrative Housing Unit ("AHU") and has been housed at times at Snake River Correctional Institution ("SRCI") in its Administrative Segregation Unit ("ASU"). During the nearly six years this case has been pending, this court undertook repeated efforts to find *pro bono* counsel to assist Evans in articulating his claims (dockets ##47, 50, 54, 58). On June 18, 2012, with the assistance of *pro bono* counsel, Evans filed a Third Amended Complaint (docket #75).

On December 17, 2012, this court stayed discovery pertaining to the claims against defendants Abbott, Hall, Jones, and Mackey (docket #130). The parties then filed extensive

briefing on cross-motions to dismiss and for summary judgment.  On January 31, 2014, this court granted another motion by Evans for appointment of *pro bono* counsel to assist him in filing the supplemental briefing (docket #212).  Acting *pro se*, on March 24, 2014, Evans filed a Motion for Temporary Restraining Order and Preliminary Injunction based on continued retaliation, which this court denied on April 8, 2014 (dockets ##216, 223).

In its Opinion and Order dated January 20, 2015 (docket #226), this court dismissed the First, Second, and Third Claims of the Third Amended Complaint and granted summary judgment for Evans as to liability on the Fourth Claim that Hearings Officer Deacon violated Evans's due process rights in the disciplinary proceedings addressing the January 26, 2012 incident.  About a month later, Evans filed another motion for appointment of *pro bono* counsel to assist him with mediation (docket #227), which was granted (docket #229), and the parties were then referred to mediation (docket #230).

Prior to the mediation, Evans filed *pro se* a Motion to Alter or Amend Judgment (docket #235) which was stayed pending completion of mediation (docket #236).  Evans then filed two more motions *pro se*, a Motion for Leave to File Fourth Amended Complaint (docket #242), which was denied with leave to renew (docket #249), and a Revised Motion for Reconsideration (docket #246).  After the mediation,[1] Evans filed a Motion to File Supplemental Claims (docket #254), seeking to add eight new claims and multiple new defendants.  Additionally, though not accompanied with a separate motion, Evans filed a First Amended Supplemental Complaint (docket #258), seeking to add two additional claims and three additional new defendants, bringing the total number of proposed claims to 14 (up from four in the Third Amended Complaint) proposing to bring the total number of defendants (excluding an unknown number of Doe defendants) to 26 (up from six in the Third Amended Complaint).  Defendants responded

---

[1]  The mediator reported to the court that the parties reached a settlement as to the Fourth Claim against Deacon.

(docket #257) to the motions to alter or amend and to reconsider, but have not responded to the motion to file supplemental claims.

For the reasons that follow, each of these motions is denied.

## DISCUSSION

## I.  Motions to Reconsider

This court has carefully considered the arguments raised by Evans in his two motions to reconsider.  Reconsideration of a prior order is appropriate if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in the controlling law."  *Smith v. Clark Cnty. Sch. Dist.*, 727 F3d 950, 955 (9th Cir 2013), quoting *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F3d 1255, 1263 (9th Cir 1993).  Evans has presented no newly discovered evidence nor pointed to an intervening change in the law.  Thus, he is left to argue that this court committed clear error or issued a manifestly unjust decision.  Clear error requires that this court be "left with the definite and firm conviction that a mistake has been committed."  *Id*, quoting *United States v. Gypsum Co.*, 333 US 364, 395 (1948).

Having again reviewed the entire record, including each of the party's 2015 and 2016 submissions, this court stands by its prior ruling.  Accordingly, this court reaffirms its Opinion and Order of January 20, 2015 (docket #226) and denies both the Motion to Alter or Amend Judgment (docket #235) and the Revised Motion for Reconsideration (docket #246).  If he disagrees, Evans is free to appeal this court's decision to the Ninth Circuit after entry of a final judgment.

///

///

## II. **Motion to Amend Pleadings**

### A. **Procedural Background**

On April 27, 2015, while mediation was ongoing, Evans, acting *pro se*, filed a Motion to File a Fourth Amended Complaint (docket #242). Evans did not attach a copy of his proposed pleading to that motion. However, in two paragraphs, he described the claims he sought to add as based on: (1) violation of his First Amendment rights based on his transfer from TRCI to SRCI's ASU on February 29, 2012; (2) violations of his Eighth Amendment rights "on a continuous basis ending December 19, 2013" in retaliation for filing this case; and (3) "additional retaliatory acts that occurred from on or about December 27, 2013 thru March 2014" for filing this case. This court stayed consideration of the motion pending mediation (docket #243). When mediation was complete, this court denied the motion to amend for failure to attach a copy of the proposed Fourth Amended Complaint as required by the local rules, but with leave to renew (docket #249).

On November 2, 2015, Evans filed the present Motion to File Supplemental Claims (docket #254), attaching his "First Supplemental Complaint" (hereafter "Proposed Fourth A/C") (docket #254-1). As discussed below, many of the proposed new claims are futile or were time-barred and do not sufficiently relate to the claims pled in the Third Amended Complaint. In essence, Evans is seeking to greatly expand the scope of this case to encompass every adverse disciplinary event while incarcerated, which is well beyond the permissible bounds of FRCP 15 after six years of litigation, including three prior amended complaints and the filing by Evans of a summary judgment motion.

///

///

**B. <u>Legal Standard</u>**

Pursuant to FRCP 15(a), the court "should freely give leave" to amend before trial "when justice so requires." However, leave to amend "is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F2d 1385, 1387 (9th Cir 1990). Deciding whether to grant leave to amend, the Supreme Court has offered the following factors for the court to consider:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 US 178, 182 (1962).

Of these factors, "[i]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d 1048, 1052 (9th Cir 2003).

However, in the context of a prisoner's suit in federal court, proposed amendments to the complaint must also be viewed in light of the restrictions imposed by 28 USC § 1915 as amended by the Prison Litigation Reform Act ("PLRA") in 1996. In a "conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict." *Harris v. Garner*, 216 F3d 970, 982 (11th Cir 2000). When considering a prisoner's proposed amended complaint, the court must also consider the restrictions on prisoner suits imposed by the PLRA, including: full payment of the filing fee through partial payments as authorized by statute (28 USC § 1915(b)(1-2)); review and summary disposition of any claim or action that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks relief against persons immune from such relief (28 USC § 1915(e)(2)(B)(ii)-(iii)); administrative exhaustion of all claims (42 USC § 1997e(a)); and a "three strike" provision which prevents a prisoner from proceeding if the prisoner's litigation in

federal court includes three or more cases dismissed as frivolous, malicious, or as stating no claim for relief.

**C. Proposed Fifth Through Twelfth Claims**

    **1. Summary**

In the Proposed Fourth A/C, Evans seeks to add eight new claims and the following additional 17 defendants to this case:[2]

(1)  Five ODOC administrators:  Colette Peters (Director),[3] Michael Gower (Assistant Director), Steve Franke (Superintendent), Mark Nooth (Superintendent), and Jeri Taylor (Acting Superintendent);

(2) 10 ODOC employees: Correctional Officers David Dick, Darrin Easley, and Linda Carter; Sergeant Kevin Hodges; Lieutenants James Edison, Rich Young, and Steve Boston; and Captains Tony Kornegay, Laine Iverson, and David Pedro;

(3)  Two ODOC inmates: David Wayne French and Robert Hayden King, Jr.; and

(4)  An unknown number of John and Jane Does who are members of the Special Needs Inmate Evaluation Committee ("SNIEC").

The Proposed Fourth A/C also names the same six ODOC employees named as defendants in the Third Amended Complaint (Doug Abbott, James Deacon, Guy Hall, Greg Jones, Genelle Mackey, and Jose Olvera) (docket #75) to the new Fifth, Sixth, Seventh and Eighth Claims.

The Proposed Fourth A/C realleges all allegations of the Third Amended Complaint (docket #75) (Proposed Fourth A/C, ¶ 25) and adds:  (1) five claims for retaliation in violation of

---

[2]  Two of these defendants (Boston and Franke) were named as defendants in the original Complaint (docket #2), and three (Boston, Iverson, and Franke) were named as defendants in subsequent proposed amended pleadings filed by Evans *pro se* (docket ##12, 42-1), but eliminated as defendants when Evans filed the Third Amended Complaint (docket #75) with the assistance of counsel on June 18, 2012.
[3]  Peters is misnamed in caption, but correctly named in the Proposed Fourth A/C, ¶ 2.

the First Amendment (Fifth Claim, Seventh Claim, Ninth Claim, Tenth Claim, and Eleventh Claim); (2) a claim for violation of the Due Process Clause of the Fourteenth Amendment (Sixth Claim); and (3) two claims for violation of the Eighth Amendment (Eighth Claim and Twelfth Claim).

Despite the liberality that normally controls amendments to a complaint, there are numerous reasons that counsel against allowing the Proposed Fourth A/C to be filed and supersede the Third Amended Complaint. First, Evans has already been given an opportunity to file a Third Amended Complaint with the assistance of *pro bono* counsel. Therefore, all claims which existed then should have been included in the Third Amended Complaint. Evans has provided no reason for his undue delay in waiting nearly two years to amend and add them. Second, at this late date, the parties have litigated cross-motions for summary judgment and dismissal. Only after Evans lost on all his claims but one (Fourth Claim against Deacon) and only during mediation of that remaining claim did he seek to file the Proposed Fourth A/C *pro se*. This series of events leads this court to conclude that Evans is acting in bad faith or with a dilatory motive. At best, he is seeking to avoid the requirements of the PLRA by including every conceivable claim arising over the last five years in one lawsuit. In addition, some of the claims are unrelated to those in the Third Amended Complaint and/or are futile, as discussed below.

## 2. **New Defendants**

Even if Evans was allowed to amend, his proposed claims against many of the new defendants are futile. Two of the new defendants are fellow inmates in ODOC custody, one of whom (King) was allegedly paying another inmate (French) to file false reports. A plaintiff asserting a claim for relief under § 1983 must prove: (1) a violation of rights protected by the

Constitution or created by federal statute (2) proximately caused (3) by conduct of a person (4) acting under color of state law. *Crumpton v. Gates*, 947 F2d 1418, 1420 (9th Cir 1991).

Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F3d 826, 835 (9th Cir 1999). Because King and French are private parties, they do not act "under color of state law" and cannot be held liable under § 1983 absent evidence that they were state employees or conspired with state employees to deprive Evans of a federal right. *Kimes v. Stone*, 84 F3d 1121, 1126 (9th Cir 1996).

Evans may be attempting to allege a conspiracy between King and/or French and various ODOC employees. However, to state a claim against a private person on a § 1983 conspiracy theory, a complaint "must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. Cnty. of Nassau*, 292 F3d 307, 324 (2nd Cir 2002), quoting *Spear v. Town of W. Hartford*, 954 F2d 63, 68 (2nd Cir 1992). A merely conclusory allegation that a private person acted in concert with a state actor does not suffice to state a § 1983 conspiracy claim against the private entity. *Id*. Since Evans fails to provide any factual basis for his conspiracy theory, he fails to state a valid § 1983 claim for pleading purposes against his fellow inmates.

Of the remaining new defendants in the caption or the remaining four claims (Eighth, Tenth, Eleventh, and Twelfth Claims), the Proposed Fourth A/C fails to provide any facts showing their connection to the new claims. Several are identified by name as ODOC employees, but are never identified as taking any action against Evans other than acting "willfully and Maliciously, or with indifference or reckless disregard of Plaintiff's rights." This includes Director Peters (Proposed Fourth A/C, ¶ 2), against whom no specific factual allegations are made; Acting Supt. Taylor (*id*, ¶ 9) named in the Ninth, Tenth, Eleventh, and

Twelfth Claims against whom no factual allegations are made, other than acting with malicious intent or indifference (*id*, ¶¶ 110, 119, 133); Lt. Edison (*id*, ¶ 10), against whom no specific factual allegations are made; and Supt. Nooth (*id*, ¶ 16) named in Eighth Claim against whom no factual allegations are made, other than acting with malicious intent or indifference (*id*, ¶ 91).

To state a civil rights claim against an individual defendant, a plaintiff must allege facts showing a defendant's personal participation in the alleged constitutional deprivation or a causal connection between a defendant's wrongful conduct and the alleged constitutional deprivation. *Taylor v. List*, 880 F2d 1040, 1045 (9th Cir 989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation).

Insofar as Evans names defendants by virtue of their positions, such as an ODOC Director or Superintendent, that is insufficient to state a claim against them. *See Ouzts v. Cummins*, 825 F2d 1276, 1277 (8th Cir 1987) (an individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement"). There is no respondeat superior liability under § 1983. *Polk v. Cnty. of Dodson*, 454 US 312, 325 (1981); *Gibson v. Cnty. of Washoe, Nev.*, 290 F3d 1175, 1185 (9th Cir 2002). "A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F2d at 1045 (citation omitted). A supervisor may also be liable if she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F2d 1435, 1446 (9th Cir 1991). Nothing in the Proposed Fourth A/C details that any of these defendants participated in, directed, knew of, or promulgated a policy resulting in the violation of Evans's rights.

Because Evans fails to show any link or connection between these defendants and the alleged violations he claims, he fails to state a claim against them under § 1983. *See Monell v. Dep't. of Soc. Servs. of City of N.Y.*, 436 US 658 (1978). Thus, if this amendment were allowed, these defendants would be dismissed based on Evans's failure to state a claim against them.

### 3. <u>Fifth Claim</u>

The Fifth Claim alleges a violation of the First Amendment based on number of retaliatory actions taken against Evans after he filed his Motion for Leave to File a Second Amended Complaint (docket #42) on January 9, 2012, to add Sgt. Olvera as a named defendant. This proposed claim is against a total of 13 defendants, including six named in the Third Amended Complaint (Olvera, Deacon, Jones, Hall, Mackey, and Abbott). The Fifth Claim alleges that several inmates (operating under the control of King, another inmate) filed false reports that Evans had made death threats against Sgt. Olvera after naming him as a defendant. Proposed Fourth A/C, ¶ 30. Shortly thereafter, on January 18, 2012, Sgt. Olvera and his supervising officer, Sgt. Hodges, allegedly threatened to send Evans to the Disciplinary Segregation Unit ("DSU") after receiving a complaint that Evans had damaged a typewriter. *Id*, ¶¶ 31-32. In response, Evans advised them that he would hold them civilly liable for their retaliation. *Id*, ¶ 34.

The Fifth Claim continues by alleging that on January 27, 2012, Evans was placed in TRCI's DSU after he allegedly threatened another inmate and threatened to file "another lawsuit" against Sgts. Olvera and Hodges. *Id*, ¶¶ 35-40 & Ex. 26. The ensuing disciplinary proceeding resulted in Evans being sent to TRCI's DSU from January 27 to February 29, 2012. *Id*, ¶ 48. On February 29, 2012, Evans was transferred to SRCI's ASU, where he remained until December 19, 2013. *Id*.

Although characterized by Evans as an "ongoing wrong" (docket #242, ¶ 1), the Fifth Claim is premised upon allegedly retaliatory actions (the disciplinary proceedings resulting in the transfers) that took place on or before February 29, 2012. In Oregon, §1983 claims are subject to the two-year period for personal injury claims under ORS 12.110(1). *See Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1140 (9th Cir 2000) (§ 1981 claim). Evans did not include this claim when he filed the Third Amended Complaint in June 2012, but waited until November 2, 2015, when he filed the Proposed Fourth A/C (docket #254-1), well beyond the expiration date of the two-year statute of limitations. Even if court gives Evans the benefit of deeming this claim to have been filed on April 27, 2015 (when he first filed a Motion to File a Fourth Amended Complaint (docket #242)), it is still time-barred.

However, if an amendment relates back to the original pleading, it may be timely filed. Pursuant to an FRCP 15(c)(1)(B), an amendment to a pleading relates back to the date of the original pleading if the amended claims "arose out of the same conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."

The Third Amended Complaint alleges four claims. Three of those claims allege violations of the Fourteenth Amendment (First and Fourth Claims) and Eighth Amendment (Second Claim) and are completely unrelated to the proposed Fifth Claim for retaliation in violation of the First Amendment. The only mention in the Third Amended Complaint of retaliation for naming Sgt. Olvera as a defendant is found in the Third Claim for violation of the First Amendment. That claim alleges that Sgt. Olvera filed a false disciplinary report on January 18, 2012, "in retaliation for being named in the proposed Second Amended Complaint." Third Amended Complaint, ¶ 44. However, based on the undisputed facts, this court granted summary

judgment to Sgt. Olvera on that claim.  Opinion and Order (docket #226), pp. 21-22.  Evans

cannot amend to reallege essentially that same claim against Sgt. Olvera.

Furthermore, by the time he filed his Third Amended Complaint in June 2012, Evans

knew or should have known of any other retaliation claims he had against the named defendants

as of that date.  Allowing this amendment would result in a wholly new action based on

completely new claims unrelated in any manner to the claims originally pled, requiring

additional discovery and motions to the prejudice of those defendants who have already been

dismissed.

Adding new defendants at this late date faces yet another obstacle.  Under FRCP 18,

which governs joinder of claims, a plaintiff may bring multiple claims, related or not, in a

lawsuit against a single defendant.  To name different defendants in the same lawsuit, however, a

plaintiff must satisfy FRCP 20, which governs joinder of parties.  Permissive joinder of multiple

defendants in a single lawsuit is allowed only if:  (1) a right to relief is asserted against each

defendant that relates to or arises out of the same transaction or occurrence or series of

transactions or occurrences; and (2) some question of law or fact common to all parties arises in

the action.  FRCP 20(a)(2).  Unrelated claims involving different defendants belong in different

suits.  *See George v. Smith*, 507 F3d 605, 607 (9th Cir 2007) ("[u]nrelated claims against

different defendants belong in different suits"); *Zhu v. Countrywide Realty Co., Inc.*, 160 F

Supp2d 1210, 1225 (D Kan 2001) (the "Federal Rules do not contemplate joinder of different

actions against different parties which present entirely different factual and legal issues").  When

there is a misjoinder of parties, the court may on its own initiative at any stage of the litigation

drop any party.  FRCP 21.  Allowing Evans to join these new and unrelated claims against new

and unrelated defendants would be futile since the court would thereafter dismiss them from this action.

Although *pro se* litigants are held to less stringent standards than represented parties, *Jackson v. Carey*, 353 F3d 750, 757 (9th Cir 2003), they must still comply with the procedural or substantive rules of the court. *See King v. Atiyeh*, 814 F2d 565, 567 (9th Cir 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F3d 896 (9th Cir 2012). Requiring *pro se* prisoners to adhere to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]," avoids confusion, ensures that prisoners pay the required filing fees, and prevents prisoners from circumventing the PLRA's three strikes rule. *George*, 507 F3d at 607; *see also Patton v. Jefferson Corr. Ctr.*, 136 F3d 458, 464 (5th Cir 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

This court will not permit Evans to expand the scope of this litigation by adding unrelated claims that occurred after Evans filed his Third Amended Complaint, naming new, unrelated defendants. To permit him to do so would allow him to avoid paying the filing fees required for separate actions, and could also allow him to circumvent the three strikes provision for any new and unrelated claims that might be found to be a "strike" under § 1915(g).

Accordingly, the request to amend to add a Fifth Claim is denied.

### 4. Sixth Claim

The Sixth Claim alleges a due process violation under the Fourteenth Amendment against Jones, Hall, Mackey, and Abbott, premised upon the transfer of Evans into SRCI's ASU on February 29, 2012, where he stayed until December 19, 2013. Evans alleges that this transfer was the result of a "sham" disciplinary proceeding, as detailed in the Fourth Claim of the Third

Amended Complaint. However, substantively, this claim falters on the same basis as does the

First Claim in the Third Amended Complaint. Defendants are entitled to qualified immunity

because all predicate acts underlying this claim took place before the date of the decision in

*Brown v. ODOC*, 751 F3d 984 (9th Cir 2014). *See* Opinion and Order (docket #226), pp. 25-31.

Accordingly, the request to amend to add the Sixth Claim is denied as futile.

### 4. **Seventh Claim**

The Seventh Claim alleges a claim for retaliation in violation of the First Amendment

right to free speech against Jones, who was a named defendant at the inception of this case, as

well as an "unknown number of John and Jane [D]oes constituting the remaining members of"

SNIEC. Proposed Fourth A/C, p. 20. This claim alleges that at a SNIEC hearing held on

October 6, 2012, to review Evans's classification status, Evans challenged Jones as having a

conflict of interest and having violated his First and Fourteenth Amendment rights when he

placed Evans in SRCI's ASU. *Id*, ¶¶ 67-70. In response, Jones summarily dismissed Evans

from the hearing and, thereby, "entered into the conspiracy[,] as did the other committee

members who failed to speak up or ask to hear Mr. Evans out[,] doing nothing to stop the

retaliation or the ongoing violation of Mr. Evans's rights." *Id*, ¶ 70. As a result, Evans was left

in the ASU through December 19, 2013, which violated his First Amendment right to free

speech "by way of retaliation to 'Chill' his Rights." *Id*, ¶¶ 71, 75.

In his initial Motion to File a Fourth Amended Complaint, Evans sought leave to file

proposed new claims for violation of his First and Eighth Amendment rights premised on his

February 29, 2012 transfer into SRCI's ASU and for "additional retaliatory acts that occurred

from on or about December 27, 2013 thru March 2014" (docket #242, ¶ 2). That description

does not encompass any claim premised upon actions taken at the SNIEC hearing of October 6,

2012. The first reference to this new claim was in the Proposed Fourth A/C filed in November 2015, well beyond the two-year statute of limitations. Even assuming the initial request to file a Fourth Amended Complaint could be construed to include this claim, that request was made on April 27, 2015, well over two years after the allegedly retaliatory action. Because it is unrelated to any claim in the Third Amended Complaint, it does not relate back under FRCP 15 to avoid the statute of limitations bar. Thus, the request to amend to add the Seventh Claim is denied as futile.

### 5. Ninth Claim

The Ninth Claim also alleges a claim for retaliation in violation of the First Amendment, naming Sgt. Olvera and six other defendants, including two inmates. The predicate acts of this claim took place in late December 2013, nearly two years after Evans first sought to add Sgt. Olvera as a named defendant in this case (January 9, 2012), based on disciplinary proceedings he initiated against Evans in December 2011 (docket #42-1, p. 10).

On December 27, 2013, a week after Evans returned to TRCI, he alleges that a TRCI inmate (French), after being paid $50 in canteen goods by another inmate (King), called the Prison Rape Elimination Act ("PREA") hotline and filed a false PREA report on Evans and his cellmate, Lee Lamb. *Id*, ¶¶ 98-99. Based on alleged conversations King had with Sgt. Olvera and C.O. Carter (another newly proposed defendant) during the previous week (*id*, ¶ 97) and another conversation between King and French (*id*, 106), Evans contends that King was acting "in concert with Stg. Olvera and Carter" to retaliate against him for naming Olvera as a defendant (two years earlier) in this case. *Id*, ¶ 98. Both Evans and Lamb were placed in the DSU, where they remained for 14 days as a result of the investigation of the allegedly falsified PREA report. *Id*, ¶¶ 101-02.

In essence, Evans is complaining that King retaliated against him by conspiring with Sgt. Olvera and C.O. Carter to initiate disciplinary proceedings against him based on a false PREA report. However, he alleges that Lt. Young was the person who questioned French to establish probable cause for the violation and placed him and Lamb in the DSU. *Id*, ¶¶ 100-01. Evans does not allege any connection between Lt. Young and Sgt. Olvera to support a reasonable inference that Lt. Young had a retaliatory motive. In addition, this disciplinary action was also taken against Lamb who had nothing to do with Evans's litigation against Sgt. Olvera and occurred two years later. In sum, this claim is based solely on speculation and is simply too attenuated and remote to relate this disciplinary action to the alleged retaliation in the Third Amended Complaint.

### 7. <u>Eighth Amendment (Eighth & Tenth) Claims</u>

#### a. <u>Legal Standard</u>

To prevail on an Eighth Amendment claim, a sentenced inmate like Evans must prove a denial of "the minimum civilized measure of life's necessities," *Rhodes v. Chapman*, 452 US 337, 347 (1981), resulting from the "deliberate indifference" of prison personnel or officers. *Wilson v. Seiter*, 501 US 294, 302–03 (1991). "The deliberate indifference standard requires the plaintiff to prove that 'the official knows of and disregards an excessive risk to inmate health or safety . . .'" *Farmer v. Brennan*, 511 US 825, 837 (1994). "This standard requires that the official be subjectively aware of the risk. The official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference." *Id*.

Further, proof of a violation of the Eighth Amendment must satisfy a two-prong test, which has both an objective and a subjective component. The objective component requires

proof that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. The subjective component requires proof that the prison official acted "with a sufficiently culpable state of mind." *Johnson v. Lewis*, 217 F3d 726, 731 (9th Cir 2000), citing *Wilson*, 501 US at 298.

### b. **Eighth Claim**

The Eighth Claim alleges that Supt. Nooth and C.O. Easley violated Evans's Eighth Amendment rights. However, as discussed above, no actionable allegations are made against Supt. Nooth, leaving only C.O. Easley.

This claim alleges that on August 13, 2013, in SRCI's ASU, C.O. Easley "entered SRCI's ASU with a large contingent of female and male correctional officers" who proceeded to conduct strip searches. Proposed Fourth A/C, ¶ 80. Evans refused to be strip searched in his cell due to the presence of the female officers who could see into the cell. *Id*, ¶¶ 81-82. He was ordered to enter the shower stall to be searched and "made to stand in a cesspool of human bio hazardous waste that [p]ooled in a 'Tub' that is in front of the actual shower stall." *Id*, ¶ 84. He was "coerced into submitting to the strip search" while "female staff had a "full unobstructed view of his body from the top tier on the Unit." *Id*, ¶ 85.

This claim is not encompassed by Evans's initial motion which refers only to retaliation claims resulting from filing this lawsuit against Sgt. Olvera. It is not filed against any defendant named in the Third Amended Complaint and seems to have little to do with those claims. Instead, it is an entirely new claim against a new party filed after Evans filed a summary judgment motion. Courts should deny leave to amend when the movant "provide[s] no satisfactory explanation for his failure to fully develop his contentions originally." *Allen v. City of Beverly Hills*, 911 F2d 367, 374 (9th Cir 1990). Evans provides no justification for waiting

from August 2013 until April 2015 to file this new claim that has no relationship to any pending claims.

It also suffers from another defect.  The fact that female officers may have observed a strip search of Evans is not sufficient for a claim under the Eighth Amendment.  "Cross-gender searches 'cannot be called inhumane and therefore do not fall below the floor set by the objective component of the Eighth Amendment.'"  *Somers v. Thurman*, 109 F3d614, 623 (9th Cir 1997) (alteration omitted), quoting *Johnson v. Phelan*, 69 F3d 144, 151 (7th Cir 1995).  Accordingly, the request to add the Eighth Claim is denied as futile.

### c.  Twelfth Claim

The Twelfth Claim alleges a violation of the Eighth Amendment against Taylor (Acting Superintendent) and Capt. Pedro premised upon Evans being exposed to chemical agents during a cell extraction on March 16, 2014, of another inmate in TRCI's DSU above and to the right of his cell.  Proposed Fourth A/C, ¶¶ 136-40; *see also* Evans's Decl. in Support of TRO (docket #217), ¶ 19.  As discussed above, no allegations identify any actionable conduct by Taylor, leaving only Capt. Pedro as a potential defendant.

The Twelfth Claim has no connection to this case, other than alleging that Evans was placed in TCRI's DSU "out of retaliation for naming staff as defendants in the instant case." Proposed Fourth A/C, ¶ 135.  This claim is based on actions far removed in time from the filing of this lawsuit in 2011 and involves new defendants unrelated to the claims in the Third Amended Complaint.  Given the prejudice to existing parties, there is simply no reason for this claim to be added to this case.  Accordingly, the request to add the Twelfth Claim is denied.

///

///

### 8. <u>First Amendment Retaliation (Tenth & Eleventh) Claims</u>

#### a. <u>Tenth Claim</u>

The Tenth Claim alleges that on January 12, 2014, C.O. Carter placed Evans in the DSU on "an unsubstantiated charge that was not backed by any evidence" of racketeering.  Proposed Fourth A/C, ¶¶ 112-19.  C.O. Carter overheard Evans questioning his cellmate (Baker) about another inmate (King) bragging to C.O. Carter and Sgt. Olvera about "how it only cost [King] $50 in canteen to get [Evans] off the unit and how staff should reimburse [King]."  *Id*, ¶ 114.  C.O. Carter was "commonly known on the unit to be having an improper staff/inmate relationship on the unit with King whom she showed special attention."  *Id*.  Based solely on the conversation she overheard and without questioning Evans or Baker, she placed Evans "maliciously into D.S.U. on bogus charges that were dismissed 7 days later."  *Id*.  As a result, Evans alleges that C.O. Carter deprived him "of a liberty interest out of a malicious retaliatory motive for Mr. Evans [*sic*] Litigious actions, violating Mr. Evans'[s] First Amendment right to speech."  *Id*, ¶ 116.

This claim appears to follow on the heels of the Ninth Claim and seems to undercut Evans's theory that King was acting in concert with Sgt. Olvera and C.O. Carter.  According to this claim, King retaliated against Evans on his own.  *See* Evans's Decl. in Support of TRO (docket #217), ¶ 6 (King "spent several days bragging to inmates and staff alike — to include Sgt. Jose Olvera [and] H. Carter . . . that he got [Evans and Lamb] off the unit by paying Mr. French $50 in canteen items.").  Although Evans alleges that C.O. Carter acted with a retaliatory motive due to his litigiousness, he alleges no facts to support that conclusion.  Instead, he alleges facts revealing that C.O. Carter acted out of her own preference for King over other inmates.

As with other new claims, the Tenth Claim impermissibly expands the scope of this case by adding a claim involving different actors than involved in the Third Amended Complaint, as well as a new defendant. Granting leave to add the Tenth Claim would prejudice the existing parties by changing the nature of this action.

### b. **Eleventh Claim**

The Eleventh Claim is a rambling description of an apparent 10-day cell restriction ordered against "every known litigious inmate" in TRCI's AHU from February 4 to 14, 2014, followed by a 35-day stint in the DSU for that same group of inmates. Proposed Fourth A/C, ¶¶ 121-25; *see also* Evans's Decl. in Support of TRO (docket #217), ¶¶ 14-17, 19. Evans alleges that the cell-in and placement in DSU were wrongful and violated his First Amendment right to free speech. *Id*, ¶ 131. The named defendants on this claim include Capt. Iverson, who apparently ordered the cell-in (*id*, ¶ 122), and Taylor, whose role is not alleged, as discussed above.

Evans alleges that on February 4, 2014, "in a blatant act of group retaliation placed every know[n] litigious inmate on the unit on Cell restriction," including an inmate (McVey) who "was not litigious" but "had filed false P.R.E.A. allegations" against another inmate "after being paid off by King months earlier." *Id* ¶ 122. On February 14, 2014, Evans and the other inmates were placed in the DSU without a charge for 30 days pending an investigation. *Id*, ¶ 125. About a month later, Evans received an unsupported disciplinary report charging him with racketeering and extortion. *Id*, ¶ 125. After he filed a Motion for Temporary Restraining Order with the court (that was later dismissed on April 8, 2014 (docket #223)), he was released from the DSU. *Id*, ¶ 126. While in the DSU, Capt. Iverson pulled him from his cell and asked if he knew an individual named James Defrank. *Id*, ¶ 127. King had claimed that Evans and another inmate

(Woodroffe) had threatened to kill him if he testified against Defrank who had murdered another inmate. *Id*, ¶ 128.

As with other new claims, this claim alleges new facts involving different persons several years later than in the Third Amended Complaint against new defendants. Although Evans may speculate that the group cell-in was directed against him due to his litigious nature, he alleges no supporting facts. To the contrary, he alleges that he was only one of several inmates subjected to a group cell-in, countering any retaliation directed specifically at him by Olvera for naming him as a defendant in this lawsuit, and that one of the group was not litigious. That factual inconsistency militates against amending to add this new claim. *See Abagninin v. AMVAC Chem. Corp.*, 545 F3d 733, 742 (9th Cir 2008).

In addition, in its Order dated April 8, 2014, denying Evan's motion for a TRO (docket #223), the court advised Evans that his claims for retaliation for actions taken at the end of 2013 through March of 2014 were "new claims that are not at issue in the Third Amended Complaint." Yet Evans took no action to amend at that time to add those claims at that time or to file a new action. Instead, he waited for a year to file his motion to amend and provides no explanation for the delay.

## III.  **Proposed Thirteenth and Fourteenth Claims**

In a separate proposed pleading filed on December 9, 2015 (docket #258), a month after Evans filed his Motion for Leave to File Supplemental Complaint (docket #254), Evans also proposes adding Thirteenth and Fourteenth Claims. The proposed Thirteenth Claim alleges that Hearings Officer Deacon violated his Fourteenth Amendment rights after another inmate, Robert Bailey, assaulted Evans August 2, 2015. *Id*, ¶ 163. That altercation resulted in a disciplinary hearing against Evans on August 7, 2015, at which Hearings Officer Deacon found Evans guilty

of Disrespect I and sentenced him to 14 days in the DSU and 14 days loss of privileges in cell. *Id*, ¶¶ 162-77.  Evans claims that Hearings Officer Deacon denied him certain exculpatory video evidence that would have shown that he was not the aggressor in the altercation with Bailey.  *Id*, ¶¶ 166-70.

In the proposed Fourteenth Claim, Evans alleges that Lt. Young and three new defendants, John Burchett, Steve Decoria, and Adam Gilroy, who are ODOC employees (*id*, ¶¶ 21-23), violated his First Amendment rights.  On October 31, 2015, Gilroy allegedly provided Evans with only five sheets of paper to complete a legal brief (rather than the eight pages Evans requested) (*id*, ¶¶ 180-81), prompting Evans to comment that he would "just add [Gilroy] to [his] law suit for violating [his] right to access the courts" (*id*, ¶ 182).  Gilroy then placed Evans on 48 hours of cell-in and electronics restrictions and for disrespect (*id,* ¶¶ 187-88).  Lt. Young signed off on the Cell-In Conduct Order.  *Id*, ¶ 188.  When Evans asked to speak with Lt. Young about the Cell-In Conduct Order, Gilroy had Evans sent to the DSU based on a disciplinary report signed off on by Burchett.  *Id*, ¶ 191.  Evans spent five days in the DSU until Hearings Officer Deacon dismissed the disciplinary charges.  *Id*, ¶ 189.

As with his Twelfth Claim, these two proposed claims are substantially removed in time from the predicate acts underlying the claims in the Third Amended Complaint and name new defendants.  They do not relate to any retaliation against Evans for filing this case against Sgt. Olvera.  This court rejects Evans's efforts to multiply the claims and parties in this case by adding every adverse action taken against him on the speculation that they are somehow substantively identical to or in retaliation for the claims alleged in the Third Amended Complaint.  Accordingly, the belated request to add the proposed Thirteenth and Fourteenth Claims is denied.

## **ORDER**

Based on the above, the following motions are DENIED:  (1) Plaintiff's Motion to Alter or Amend Judgment (docket #235); (2) Plaintiff's Revised Motion for Reconsideration (docket #246); and (3) Plaintiff's Motion to File Supplemental Claims (docket #254).  This court reaffirms its prior rulings, as set forth in the Opinion and Order dated January 20, 2015 (docket #226).

Based on the report by the mediator of a settlement on the one remaining claim (Fourth Claim against Deacon), defendants shall submit an appropriate form of Judgment in 14 days.

DATED February 12, 2016.

s/ Janice M. Stewart
_____
Janice M. Stewart
United States Magistrate Judge